**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

|  |  |  |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | |
| ACE AMERICAN INSURANCE COMPANY; | ) | |
| CHUBB NATIONAL INSURANCE COMPANY; | ) | |
| CHUBB INDEMNITY INSURANCE COMPANY; | ) | |
| CONAGRA BRANDS, INC.; and CONAGRA | ) | |
| FOODS PACKAGED FOODS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Norfolk Southern Railway Company ("Norfolk Southern"), for its complaint against Defendants ACE American Insurance Company ("ACE"); Chubb Limited, Chubb National Insurance Company, and Chubb Indemnity Insurance Company (hereinafter, individually and collectively "Chubb" unless otherwise stated); and Conagra Brands, Inc. and Conagra Foods Packaged Foods, LLC (hereinafter, individually and collectively "Conagra" unless otherwise stated) solely as interested parties as the primary insureds under the subject insurance liability policy, and states the following:

1.     Norfolk Southern brings this insurance coverage action against ACE, Chubb, and Conagra (only as interested parties). The Defendants ACE and Chubb have acted in derogation of their contractual and common law duties in the following ways: by failing to acknowledge or respond to Norfolk Southern's notice of claim; by failing to produce the policy of liability insurance held by Conagra, as the primary insured, to which Norfolk Southern is a named

1

additional insured; and by failing to defend Norfolk Southern, to reimburse Norfolk Southern's attorney fees and defense expenses, and to respond to Norfolk Southern's request for indemnification or to agree to assume indemnification of Norfolk Southern for any adverse judgment or reasonable settlement of the claims raised in *Jason Steven Myers v. Norfolk Southern Railway Company and Conagra Foods Package Foods, LLC, and Conagra Brands, Inc.*, Civil Action No. 36314-IV, pending in the Circuit Court of Cocke County, Tennessee (the "*Myers* Lawsuit").

2.      As a consequence of ACE and Chubb's action and omissions, including breach of contract, Norfolk Southern has borne the costs associated with defending the *Myers* Lawsuit without the benefit of the insurance protection to which it is entitled. Norfolk Southern also faces uncertainty as to whether ACE and/or any of the Chubb entities stand ready to indemnify Norfolk Southern in the event of an adverse judgment or should there be a reasonable settlement of the *Myers* Lawsuit.

3.      This action arises out of an incident (the "Incident") that occurred on March 3, 2021 while Norfolk Southern employee, Jason Steven Myers ("Plaintiff Myers"), was servicing an industrial facility in Newport, Tennessee (the "Facility"), owned by Conagra Foods Packaged Foods, LLC, a subsidiary of Conagra Brands, Inc.

4.      Following the Incident, Plaintiff Myers brought the *Myers* Lawsuit against both Norfolk Southern and Conagra.

5.      As part of the agreement for Norfolk Southern to provide freight commodity service to Conagra's Facility, Conagra provided Norfolk Southern with a Certificate of Liability Insurance that expressly identifies Norfolk Southern as an additional insured under Conagra's liability policy with ACE that was in effect at the time of the Incident.

2

6.     Despite repeated requests from Norfolk Southern, ACE and/or Chubb has failed to provide Norfolk Southern with a copy of the ACE Policy, has failed to respond to Norfolk Southern's notice of an occurrence (the Incident) and subsequent notices of suit, has failed to acknowledge its insurance obligations to Norfolk Southern with respect to the *Myers* Lawsuit, and has failed to indemnify Norfolk Southern for amounts Norfolk Southern has incurred to date in defending against the Incident and *Myers* Lawsuit, necessitating this action.

7.     Norfolk Southern seeks a declaration of the rights, duties, and liabilities of ACE and/or the Chubb entities, and Norfolk Southern with respect to the *Myers* Lawsuit.  Norfolk Southern also seeks compensatory damages, the Tennessee bad faith statutory penalty, and punitive damages for the insurer(s)' bad faith, reckless, fraudulent, intentional, and malicious acts and omissions, including breaches of the ACE Policy in the form of insurance carrier(s)'s failure to perform the duty to defend and indemnify Norfolk Southern for defense expenses arising out of the Incident and *Myers* Lawsuit.

## PARTIES

8.     Plaintiff Norfolk Southern is, and at all pertinent times was, a Virginia corporation. At the time of this filing, Norfolk Southern's principal place of business is in Atlanta, Georgia.

9.     Defendant ACE, NAIC 22667 Chubb Ltd Group 626, is, and at all times pertinent was, an insurance company, acting as a subsidiary company of Chubb Limited, a foreign corporation headquartered in Zurich, Switzerland.  ACE was incorporated under the laws of and has its principal place of business in the State of Pennsylvania, specifically 436 Walnut Street, Philadelphia, Pennsylvania, 19106, and is authorized to and does conduct business in the State of Tennessee.  Upon information and belief, claims under ACE's liability policies are managed and

3

administered from offices in Pennsylvania. ACE can be served with process through the Tennessee Commissioner of Insurance, pursuant to Tenn. Code Ann. § 56-2-103.

10. Upon information and belief, Defendants Chubb National Insurance Company, NAIC 10052 Chubb Ltd Group 626, and Chubb Indemnity Insurance Company, NAIC 12777 Chubb Ltd Group 626, both also subsidiaries of Chubb Limited, at all relevant times were insurance companies, which manage and administer, and/or participate in the management and administration of, ACE policies and claims made under ACE policies. Chubb National Insurance Company was incorporated under the law of the State of Indiana, has its principal place of business in New Jersey, specifically at 202B Hall's Mill Road, Whitehouse Station, New Jersey 08889, and is authorized to and does conduct business in the State of Tennessee. Chubb Indemnity Insurance Company is domiciled in the State of New York, with its principal office at 55 Water Street, New York, New York 10041, and is authorized to and does conduct business in the State of Tennessee. Both Chubb entities can be served with process through the Tennessee Commissioner of Insurance, pursuant to Tenn. Code Ann. § 56-2-103.

11. Conagra Foods Packaged Foods, LLC ("CFPF") is a subsidiary of Conagra Brands, Inc. ("Conagra"), and CFPF is the entity that owned the property where plaintiff Jason Myers was injured in Newport, Tennessee in the *Myers* Lawsuit at the time of his incident. CFPF is a named subsidiary, and thus a primary insured under the ACE Policy held by primary insured Conagra. See, Certificate of Liability Insurance, which is incorporated as if set forth verbatim herein. Upon information and belief, Conagra and CFPF are receiving, or should be receiving, defense and indemnity in the *Myers* Lawsuit, through the ACE Policy. Because Conagra is the primary insured under the ACE Policy, it is made a party defendant solely as an interested party. Conagra Brands, Inc. was incorporated under the laws of the State of Delaware, has its principal office in the State

4

of Illinois, and conducts business in the State of Tennessee. Service of process can be served through its designated registered agent CT Corporation, which is located at 300 Montvue Road, Knoxville, Knox County, Tennessee 37919. Conagra Foods Packaged Foods, LLC was incorporated under the laws of the State of Delaware, has its principal office in the State of Illinois, and conducts business in the State of Tennessee. Service of process can be served through its designated registered agent CT Corporation, which is located at 300 Montvue Road, Knoxville, Knox County, Tennessee 37919.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action is between citizens of different states and the amount in controversy exceeds the $75,000 jurisdictional minimum.

13.     This Court has personal jurisdiction over all Defendants.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the *Myers* Lawsuit arose from a personal injury incident that occurred in Cocke County, Newport, Tennessee, which is within the Eastern District of Tennessee, and the registered agent for the primary insureds Conagra is located in Knox County, Knoxville, Tennessee.

15.     This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. § 2201 because Norfolk Southern and ACE and/or the Chubb entities are engaged in an actual controversy susceptible to specific relief over the meaning of provisions in the ACE Policy and the administering and management of Norfolk Southern's notice of claim and demand for defense and indemnity in the *Myers* Lawsuit.

## FACTUAL BACKGROUND

**A.      The *Myers* Lawsuit.**

5

16.     On March 3, 2021, Plaintiff Myers, a conductor and employee of Norfolk Southern, was providing rail freight service to Conagra's Facility.  At the time of his injury, Plaintiff Myers was acting as a member of the crew for the local switcher operation designated as Job T-29. This job provided rail service to Norfolk Southern customer industries, including Conagra and its Facility in Newport, Tennessee.  He was injured within Conagra's premises within the course and scope of his job and the business of Conagra and Norfolk Southern to pick up and drop off railcars.

17.     Plaintiff Myers' duties at Conagra's Facility included coupling and connecting the air hoses of rail cars located on an elevated pad near an unloading pit. Plaintiff Myers was injured by a tow rope, used by Conagra employees as part of a puller facility to position railcars over a commodity unloading pit.  Instead of being cradled while not in use, Conagra employees left the tow rope on the floor of the walkway in Plaintiff Myers's work area, and when he stepped down from the elevated pad to Conagra's walkway after making the railcar connections, he stepped on the rope. The rope caused his right foot and ankle to twist, resulting in a fracture and other injuries to his lower extremity.

18.     On February 22, 2022, Plaintiff Myers filed a complaint (the "*Myers* Complaint") for personal injury against both Norfolk Southern and Conagra. A true and correct copy of the *Myers* Complaint is attached as **Exhibit 1**.

19.      The *Myers* Complaint alleges that Norfolk Southern is liable to Plaintiff Myers under the Federal Employers' Liability Act, 45 U.S.C. § 51, essentially by virtue of the nondelegable duty imposed on railroads to provide their employees with a reasonably safe work environment. *See* **Exhibit 1** at ¶¶ 13-20.  Norfolk Southern denies that it was independently or actively negligent in any regard.

6

20.     The *Myers* Complaint further alleges that Conagra is liable to Plaintiff Myers under common law theories of negligence and premises liability, in addition to breach of any agreement that may have been in place with Norfolk Southern. *See* **Exhibit 1** at ¶¶ 21-30.

### B.     *The Conagra/Norfolk Southern Industry Track Agreement and Vendor Contract*

21.     On or about November 16, 1992, Norfolk Southern and The Quaker Oats Company entered into a contract (hereinafter "Industry Track Agreement"), a true and correct copy of which is attached as **Exhibit 2A** and incorporated herein. The Industry Track Agreement relates to construction, ownership, and maintenance of certain tracks and facilities, including an unloading pit, and rail service in Newport, Tennessee, at the facilities, that were owned, operated, and maintained by Defendant Conagra on March 3, 2021.  The Industry Track Agreement concerned tracks and facilities, delineated as Track No. 1 and Track No. 2, with Track No. 1 encompassing the subject area where Plaintiff Myers alleges in the FELA Action he was injured.  The Industry Track Agreement appended and incorporated a drawing, notated as No. KD-0080, dated July 20, 1989.

22.     On or about July 25, 1994, Norfolk Southern entered into an agreement supplemental to, referencing, and incorporating the Industry Track Agreement with The Quaker Oats Company, (hereinafter, both agreements are collectively referred to as "Industry Track Agreement" unless specifically noted otherwise, in which case the supplemental agreement will be called "Supplemental Agreement"). A true and correct copy of this supplemental agreement is attached as **Exhibit 2B**.  This Supplemental Agreement specifically applies, as relevant here, to the following:  the industry The Quaker Oats Company's construction of an additional track, designated as Track No. 3, approximately 269 feet in length, with its switch point in Track No. 1; the industry Quaker Oat Company's extension of an unloading pit under Track No. 1  to also be

7

located under Track No. 3; and the industry The Quaker Oats Company's installation of a car puller adjacent to Track No. 3. The Supplemental Agreement governs "the operation, ownership and maintenance of Track No. 3, the unloading pit [], and the car puller [] located as shown on print of Drawing No. KD-0080-R2.…" Drawing No. KD-0080-R2 is appended and incorporated into the Supplemental Agreement.

23.     The Industry Track Agreement applies to track and rail service in Newport, Tennessee, at the facilities now owned, operated, and maintained by Defendant Conagra and encompasses the location where Defendant Conagra placed the puller facility tow rope that Plaintiff Myers alleges in the *Myers* Lawsuit caused him to injure himself, (hereinafter, this area will be referred to as the "Conagra Facilities").

24.     Conagra succeeded to or assumed the rights and obligations contained in the Industry Track Agreement, as represented in a litigation letter submitted by Conagra's in-house counsel to Norfolk Southern concerning a prior event involving a railroad employee at this same Conagra facility. In that letter, Conagra represented that Defendant Conagra acquired certain assets of the Quaker Oats Company, including the Newport Conagra Facility and rights and obligations under industry track agreements. Conagra further represented that the scope of Defendant Conagra's potential liability and indemnification obligations to Norfolk Southern in the former action were governed by the industry track agreements. By this succession or assumption, Defendant Conagra now constitutes the "Industry" as the Industry Track Agreement and Supplemental Agreement use the term.

25.     Norfolk Southern is a party to the Industry Track Agreement, and agreed to Conagra's assumption of the Industry Track Agreement, waiving written consent to the assumption, as evidenced by providing rail freight commodity service to Conagra.

8

26.     It is common for business entities to have indemnity agreements, and this common business practice is evidenced by Defendant Conagra's inclusion of Norfolk Southern on its general liability insurance policy as an additional insured.  Defendant Conagra took over from the Quaker Oats Company the same Newport facilities with the same freight commodity operations and many of the same personnel.  For several years, continuously from and after 1995 until Conagra sold the property after the Myers Incident, Norfolk Southern provided to Defendant Conagra rail freight commodity service at the Conagra Newport facilities, on tracks and other facilities owned and operated by Defendant Conagra pursuant to a negotiated price authority contract, and, on March 3, 2021, as on other occasions, under a bill of lading and published Conditions of Carriage.

27.     The Industry Track Agreement, Supplemental Agreement, shipping price authority, bill of lading, and published Conditions of Carriage were in full force and effect at the time of Plaintiff Myer's alleged accident on May 3, 2021.

28.     In addition to applicable common law and state and federal statutory rights, obligations, and liabilities, the price authorities, bill of lading, Industry Track Agreement and Supplemental Agreement govern Defendant Conagra's liability and indemnification to Norfolk Southern.

29.     There is no dispute that Defendant Conagra owned and controlled the Conagra Facilities, including Track No. 1 and Track No. 3, the unloading pit, and the car puller and the areas and walkways abutting Track No. 1 and Track No. 3, the unloading pit, and the car puller at the location where Plaintiff Myers alleges he was injured on May 3, 2021.

30.     Defendant Conagra had the common law duty and obligation to inspect and maintain its Conagra Facilities and its adjoining property, including any appurtenances and fixtures

9

including the puller and its constituent parts such as the tow rope, walkways, and area around the pit, in a safe condition, free of obstruction or hazard, for the employees of Norfolk Southern and for the safe operation of engines and railcars on the Industry Track No. 1 and Track No. 3 and over the unloading pit, providing rail service to the industrial facility.

31. The Industry Track Agreement and Supplemental Agreement impose a contractual obligation on the part of Industry Defendant Conagra to maintain the Conagra Facilities, including Track No. 1, the unloading pit, and the puller with its constituent parts, and the areas around these Conagra Facilities, in a safe condition, free from obstruction and hazards. The Industry Track Agreement and Supplemental Agreement specifically mandate this obligation, in relevant part, as follows:

> 2. Title to all rails, materials and fixtures in the portion of said Track No. 1 extending from Station 4+32 to the end…is vested in Industry…
>
> 3. Industry will, at the cost and expense of Industry, maintain the portion of said industrial track owned by Industry, as aforesaid, in good condition and repair and in all respects in accordance with the reasonable requirements of Railroad looking to the safe and convenient operation of engines and cars on said track . . . .
> ***
> 6. Industry agrees to keep the premises around and about said track clean and free of…unsightly matter…
>
> ***
> 9. …Notwithstanding any other provisions hereof, Industry agrees to comply entirely at its own expense with all requirements imposed by any governmental agency, state, or federal or local, with respect to clearances, walkways, specification and condition or maintenance of that part of the subject track which is owned or maintained by Industry.
> ***
> 11.(c) …Industry will, at all times during the life of this agreement, keep the premises around and about said pit clean and free of. . .any unsightly or flammable matter.

10

(**Exhibit 2A**: Industry Track Agreement at "Exhibit A" p. 1, 4, 5 as adopted and applicable to Track No. 3 and other subject Conagra Facilities pursuant to paragraph 1 of **Exhibit 2B**: Supplemental Agreement).

3. Industry will maintain said Facility at all times during the life of the Agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Railroad or other persons on or about said track.
(**Exhibit 2B**: Supplemental Agreement, p. 2, para. 3).

32.    Through Defendant Conagra's sole negligence and/or through violation of its contractual obligations, even if not negligent, the Industry Track Agreement and Supplemental Agreement (through adoption of the Industry Track Agreement) provide for defense and indemnity obligations by Defendant Conagra to Norfolk Southern and specifically provides in relevant part as follows:

5. The liability of the parties to this agreement, as between themselves, for . . .personal injury and property loss and damage. . .which occurs by reason of, or arises out of, or is incidental to, the . . .operation, maintenance, use, presence. . .of the track covered by this agreement and the right of way therefor, shall be determined in accordance with the following provisions:
* * *
(b) Industry shall be solely responsible for, and shall bear all cost, expense and liability resulting from. . .personal injury. . .caused solely by the negligence of Industry, or of the agents or employees of Industry, or by the violation of Industry or its agents or employees of the terms of this agreement. . .;
* * *
(f) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto.
* * *
7. Notwithstanding any other provisions of this agreement, Industry will, moreover, indemnify and save harmless Railroad…from and against any loss of life, personal injury and any property loss or damage which may occur during or which result from the movement of said cars by Industry, as aforementioned, whether or not negligence on the part of Railroad may have caused or contributed to such loss, damage, injury or death.

11

(**Exhibit 2A**: Industry Track Agreement at "Exhibit A" p. 2, 3, 5 as adopted and applicable to Track No. 3 and other subject Conagra Facilities pursuant to paragraphs 1 and 5 of **Exhibit 2B**: Supplemental Agreement).

33.     Plaintiff Myers alleges he was injured in an area adjacent to the unloading pit, and

the following indemnity provisions of the Industry Track Agreement, adopted by the Supplemental

Agreement, are applicable:

> 11.(b) Industry shall, and hereby agrees that it will, maintain said unloading pit, at all times during the existence of the same under said track, in such condition that said pit, or the use thereof by Industry, shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track and the roadbed therefor, or endanger life or limb of employees of Railroad or other persons on or about said track, or operations of Railroad upon said track.
> * * *
> (d) Industry proposes to maintain and use said unloading pit under said track with full cognizance of the risk of loss of life, personal injury or property loss or damage which may be caused by or result from railroad operations over said pit. . .Industry covenants that said pit is to be maintained and used solely at the risk of Industry, and that neither Railroad…shall assume any responsibility in connection therewith; Industry hereby specifically agreeing, notwithstanding any other provisions of this agreement to indemnify and save harmless Railroad from and against any all such loss, injury or damage, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.
> (**Exhibit 2A**: Industry Track Agreement at "Exhibit A" p. 5 at para. 11(b), (d)).

34.     Plaintiff Myers alleges he was injured on a tow rope, laying in the walkway adjacent

to Track No. 1 and the unloading pit.  The tow rope is part of the puller Facility, used by Conagra

employees to move rail cars on Track No. 1 and Track No. 3 in order to align the rail cars over the

unloading pit.  The following provisions of the Industry Track Agreement and Supplemental

Agreement are applicable:

> 3.  Industry will maintain said Facility at all times during the life of the Agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track,

12

or endanger life or limb of employees of Railroad or other persons on or about said track.
***
5. The parties hereto agree that the use of said Facility by Industry shall be made subject to the terms of Article 7 of the Agreement insofar as Industry shall use the Facility for movement of cars on the industrial track.
(**Exhibit 2B**: Supplemental Agreement, p. 2, paras. 3, 5).
7. Notwithstanding any other provisions of this agreement, Industry will, moreover, indemnify and save harmless Railroad…from and against any loss of life, personal injury and any property loss or damage which may occur during or which result from the movement of said cars by Industry, as aforementioned, whether or not negligence on the part of Railroad may have caused or contributed to such loss, damage, injury or death.
(**Exhibit 2A**: Industry Track Agreement at "Exhibit A" at p. 3).

### C. The ACE Insurance Policy.

35.     As evidence of its compliance with indemnity requirements under the Industry Track Agreement and its vendor relationship with Norfolk Southern, Conagra provided to Norfolk Southern a Certificate of Liability Insurance, dated May 13, 2020, stating that Conagra maintained liability insurance under ACE Policy Number XSL G7123647A ("ACE Policy").

36.     A true and correct copy of the Certificate of Insurance is attached as **Exhibit 3** and incorporated as if set forth verbatim herein.

37.     The Certificate of Liability Insurance evidences that Conagra had added Norfolk Southern as an additional insured under the ACE Policy.

38.      According to the Certificate of Insurance, the ACE Policy was in effect from June 1, 2020 until June 1, 2021.

39.     Based upon information and belief, ACE and/or the Chubb entities are currently providing coverage to Conagra for the Incident in accordance with the terms and provisions of the ACE Policy.

13

40.     Based upon information and belief, Norfolk Southern is likewise entitled to receive coverage for the Incident from ACE and/or Chubb in accordance with the terms and provisions of the ACE Policy.

41.     Despite multiple requests by Norfolk Southern, ACE and/or the Chubb entities have refused to provide Norfolk Southern with a copy of the ACE Policy, or otherwise acknowledge Norfolk Southern's multiple, legitimate tenders for defense and indemnification in accordance with the terms and provision of the ACE Policy.

42.     Upon information and belief, although refusing to provide the ACE Policy to Norfolk Southern, based on typical commercial general liability policies of insurance approved by the Tennessee Commissioner of Insurance, the ACE Policy covered Norfolk Southern as an additional insured for losses caused, in whole or in part, by acts and omissions related to the Conagra Industry Track Agreement and Conagra/Norfolk Southern vendor relationship. At the same time, upon information and belief, the ACE Policy covers Conagra for amounts Conagra has assumed pursuant to an insured contract, i.e., Conagra's obligation to indemnify Norfolk Southern for personal injury claims arising from and related to freight operations at the Conagra facility.

43.     Upon information and belief, under the ACE Policy, typical of liability policies, an insured is covered for sums that the insured becomes legally obligated to pay because of "bodily injury" caused by an accidental occurrence that takes place in the coverage territory during the policy period subject to the terms and limitations of the policy.

44.     The Incident would be an occurrence within the meaning of the ACE Policy.

45.     Upon information and belief, based on typical liability policies, an insured is covered for negligence resulting in liability for an occurrence unless there is a policy term, condition, or exclusion that acts to limit coverage.

14

46. Based on typical liability policies, it is believed that there is no policy term or condition in the ACE Policy limiting an additional named insured's coverage to only those liabilities for which it bears vicarious liability.

47. Based on typical liability policies, it is believed that there is no policy provision in the ACE Policy excluding coverage for an additional named insured in the event the additional named insured's negligence contributed to the occurrence giving rise to the liability for which the additional named insured seeks coverage.

48. Because Conagra accepts commodity freight and freight services from Norfolk Southern in many facilities in many states, including the Conagra facility in Newport, Tennessee, upon information and belief, the Incident took place in what would be the coverage territory defined in the ACE Policy.

49. As a result of the Incident, Plaintiff Myers sued Norfolk Southern and alleged that Norfolk Southern was legally obligated to pay him sums because of bodily injury.

50. As a result of the Incident, Plaintiff Myers sued Conagra and alleged that Conagra was legally obligated to pay him sums because of his bodily injury.

51. Based on the facts and circumstances of the Incident, and the parties' evaluation, the parties in the *Myers* Lawsuit have agreed to mediate and attempt to settle the *Myers* Lawsuit. Upon information and belief, ACE and/or Chubb are aware, or should be aware, of the proposed mediation of the *Myers* Lawsuit.

52. Upon information and belief, there are no terms in the ACE Policy excluding Norfolk Southern's coverage as an additional insured for losses arising from the Incident.

53. Norfolk Southern is covered as an additional insured for losses arising from the Incident under the ACE Policy.

15

54.     In addition to additional insured coverage for Norfolk Southern, upon information and belief, ACE and/or Chubb promised to indemnify the named primary insured, Conagra, in the event Conagra has a liability assumed under an insured contract because of bodily injury or property damage.

55.     Through the Industry Track Agreement, and Conagra's assumption of the Industry Track Agreement, express or implied, including by accepting freight services under a negotiated price authority with Norfolk Southern and bill of lading, Conagra assumed liability when it agreed to indemnify Norfolk Southern.

56.     The Incident arose from, was incident to, or was in connection with the acts or omissions, negligent or otherwise, of Conagra.

57.     The Incident was not caused solely by the negligent, or otherwise, conduct of Norfolk Southern.

58.     The Incident was not caused by any misconduct or fault of Norfolk Southern.

59.     Conagra's contractual obligation to indemnify Norfolk Southern from and against "all cost, expense, and liability" resulting from "personal injury" arising out of the Incident, including but not limited to investigation of the Incident, defense of the *Myers* Lawsuit, and the cost of any settlement or judgment for Plaintiff Myers, upon information and belief, is covered under the ACE Policy.

### C.     *Norfolk Southern's Defense and Indemnity Communications.*

60.     Although Conagra employees were present when the Incident occurred, and Conagra management conducted an investigation the next day, within two days following the Incident, on March 5, 2021, Norfolk Southern formally and in writing notified Conagra of the

16

Incident and Conagra's indemnity obligations and alerted Conagra that Norfolk Southern would look to Conagra as solely responsible for all costs arising from and related to the Incident.

61.     Norfolk Southern kept Conagra apprised of developments in the Incident claim by contacting Conagra's third-party administrator. Additionally, Conagra was aware of the developments in the *Myers* Lawsuit because Conagra was sued, and Norfolk Southern communicated about the Incident and its demand for defense and indemnity to insurer-provided defense counsel for Conagra. Conagra, and ACE and/or Chubb, had further knowledge of the *Myers* Lawsuit because Plaintiff Myers and Norfolk Southern sought discovery from Conagra.

62.     Upon learning about the Incident and, subsequently, upon learning of the *Myers* Lawsuit, Conagra had a duty pursuant to the ACE Policy to provide notice to ACE and/or Chubb of the occurrence and suit implicating the ACE Policy.

63.     Norfolk Southern reasonably relied upon Conagra to comply with the notice requirements of the ACE Policy.

64.     Additionally, on multiple occasions from and after March 31, 2022, Norfolk Southern, through its counsel, wrote letters, e-mails, and otherwise communicated to Conagra's counsel in the *Myers* Lawsuit, providing investigation materials about the Incident and *Myers* Lawsuit, demanding that Conagra accept its tender for defense and indemnification in the *Myers* Lawsuit, requesting a copy of the insurance policy under which Norfolk Southern was believed to be an additional insured, and directing Conagra to give the insurance carrier notice of the suit and the insurance carrier's obligations for Norfolk Southern's defense and indemnity. For example, see, a true and correct copy of the March 31, 2022, which is attached as **Exhibit 4**.

17

65. Having received no response from any insurance representative, including ACE and/or Chubb, Norfolk Southern conducted an investigation and located the Certificate of Liability Insurance, naming Norfolk Southern as an additional insured on the ACE Policy.

66. Promptly, thereafter, in a letter and e-mail, dated August 8, 2023, Norfolk Southern, through its counsel, again requested that Conagra's counsel in the *Myers* Lawsuit submit to the insurance carrier its demand for defense and indemnification, as an additional insured under the ACE Policy or otherwise provide contact information for the insurance representative.

67. In a letter dated, September 13, 2023, Norfolk Southern's counsel provided to ACE and Chubb information about the Incident and *Myers* Lawsuit, requested a copy of the ACE Policy as an additional insured, and demanded that ACE defend Norfolk Southern in the *Myers* Lawsuit and pay any judgment up to the ACE Policy limits in accord with the ACE Policy to which Norfolk Southern is an additional insured. Pursuant to directions on ACE's and Chubb's websites (ACE's claims notification website directs the user to Chubb's claims website), this letter was transmitted via email to the following addresses: cscfnol@chubb.com; chubbclaimsfirstnotice@chubb.com; and aceclaimsfirstnotice@acegroup.com. The letter was also mailed, postage pre-paid, to the ACE address (provided on the ACE and Chubb websites) and to the broker at the address provided in the Certificate of Liability Insurance. The letter was emailed to the insurance broker pursuant to the Certificate of Liability Insurance. A true and correct copy of the 9/13/23 letter, corresponding e-mails, and screenshots of ACE's and Chubb's claims reporting websites are attached as collective **Exhibit 5**.

68. In an e-mail, dated September 14, 2023, a representative of Chubb, Garima Gupta, from Chubb Claims acknowledged receipt of Norfolk Southern's Claim Notice. A true and correct copy of the 9/14/23 e-mail is attached as **Exhibit 6**. Norfolk Southern never received a claim

18

number, an assignment of a claim representative, the ACE Policy, or any other information related to its claim.

69. Considering there was no additional communication from ACE and/or Chubb, beginning November 14, 2023, Norfolk Southern made further attempts to communicate with ACE and/or Chubb, including its counsel in the *Myers* Lawsuit emailing Conagra's counsel in the *Myers* Lawsuit with a request that Conagra's counsel share the contact information for the ACE and/or Chubb claim representative overseeing Conagra's defense in the *Myers* Lawsuit so that Norfolk Southern's counsel could tender its claim for defense and indemnity as an additional insured through an employee of ACE and/or Chubb who would presumably be familiar with the *Myers* Lawsuit and the indemnity issues.

70. At the filing of this Complaint, Norfolk Southern has still not received from ACE and/or Chubb any substantive information, including the insurer's position on additional insured coverage and defense, and indemnity of Norfolk Southern in the *Myers* Lawsuit. Furthermore, Norfolk Southern has not been provided a copy of the ACE Policy as demanded on multiple occasions.

71. The Industry Track Agreement and vendor relationship, which impose upon Conagra an obligation to name Norfolk Southern as an additional insured, and the Certificate of Liability Insurance, all of which Norfolk Southern has provided to Conagra, ACE, and Chubb establish that Norfolk Southern is an additional insured and has a right to a copy of the ACE Policy.

72. To this day, ACE and/ Chubb have refused to state whether the insurance carrier considers Norfolk Southern an additional named insured with regard to the Incident and *Myers* Lawsuit.

19

73.     In the meantime, Norfolk Southern has incurred substantial attorney fees and expenses in protecting itself and defending the *Myers* Lawsuit and in attempting to submit its claim for defense and indemnity to ACE and the Chubb entities as an additional insured, all while ACE and/or the Chubb entities have acted in a dilatory, obfuscatory, negligent, reckless, malicious, and intentional manner in failing to respond to, administer, and manage Norfolk Southern's notice of claim and demand for defense and indemnity and to fulfill it/their obligations to Norfolk Southern as an additional insured under the ACE Policy for defense and indemnity for the Incident and the *Myers* Lawsuit.

## CLAIMS FOR RELIEF AGAINST ACE AND CHUBB

### COUNT I - Declaratory Judgment

74.     All previous paragraphs are hereby incorporated by reference.

75.     ACE and/or Chubb have an obligation to indemnify Norfolk Southern for losses caused, in whole or in part, by acts or omissions in the performance of Conagra's and Norfolk Southern's ongoing freight operations at Conagra facilities under the parties' vendor agreement, business relationship, and/or the Industry Track Agreement.

76.     Conagra negligently failed to maintain acceptable conditions at the Newport Conagra Facility, which resulted in the Incident and Norfolk Southern's Incident liabilities.

77.     Norfolk Southern's Incident liabilities are covered under the ACE Policy.

78.     Norfolk Southern has asked ACE and/or Chubb to participate in the Myers Lawsuit, but ACE and/or Chubb have chosen not to participate.

79.     Norfolk Southern has a reasonable anticipation of liability in the *Myers* Lawsuit and has incurred reasonable and necessary attorney fees and defense expenses in investigating and otherwise protecting its interests in the Incident and to defend against the *Myers* Lawsuit.

20

80.     ACE and/or Chubb have a duty to indemnify Norfolk Southern for liabilities arising out of the Incident, including any settlement or judgment in the *Myers* Lawsuit, and reimbursement of Norfolk Southern's reasonable and necessary defense expenses, including attorney fees.

## COUNT II - Breach of Contract

81.     All previous paragraphs are hereby incorporated by reference.

82.     Norfolk Southern is an additional named insured under the ACE Policy with respect to the Incident and the *Myers* Lawsuit.

83.     The *Myers* Lawsuit seeks damages from Norfolk Southern because of bodily injury arising out of an occurrence, as those terms are likely defined in, or otherwise within the meaning of, the ACE Policy.

84.     Norfolk Southern timely and repeatedly sought ACE's and/or Chubb's defense and indemnity consent, not to be unreasonably withheld, on behalf of Norfolk Southern in the *Myers* Lawsuit.

85.     Norfolk Southern acted as a reasonable uninsured entity would in evaluating and/or acting upon the Incident and defending the *Myers* Lawsuit, and, in so doing, incurred substantial, reasonable costs, and has acted to agree to attempt to resolve the claims alleged in the *Myers* Lawsuit rather than risk a more significant jury verdict.

86.     Norfolk Southern asked ACE and Chubb to acknowledge coverage obligations to Norfolk Southern with respect to the Myers Lawsuit and to provide a copy of the insurance policy on repeated occasions.

87.     Norfolk Southern advised Conagra, ACE, and Chubb that Norfolk Southern would incur defense costs.

21

88.     ACE and Chubb knew, or should have known, that litigation events, including investigation, written discovery, and site inspections, would cause Norfolk Southern to incur attorney fees and defense expenses.

89.     ACE and Chubb have knowledge that defendants in the *Myers* Lawsuit are incurring attorney fees and defense expenses.

90.     ACE and Chubb have failed to substantively respond to Norfolk Southern's multiple requests that ACE and/or Chubb recognize the insurance coverage obligation, inclusive of defense expenses, under the ACE Policy.

91.     ACE and/or Chubb have not paid any of the attorney fees and defense expenses Norfolk Southern has incurred in defending itself in the *Myers* Lawsuit.

92.     ACE and/or Chubb's failure to timely respond to Norfolk Southern's notice of claim and demand for defense and indemnity for the claims made against it in the *Myers* Lawsuit, upon information and belief, is a breach of the ACE Policy.

93.     ACE and/or Chubb have not issued a reservation of rights letter to Norfolk Southern in response to Norfolk Southern's repeated requests that ACE and/or Chubb pay attorney fees and defense expenses on behalf of Norfolk Southern.

94.     ACE and/or Chubb's failure to perform the contractual duty to pay Norfolk Southern's attorney fees and defense expenses to date on behalf of Norfolk Southern, upon information and belief, is a breach of the ACE Policy.

95.     ACE and/or Chubb failed to adequately reserve any right to contest coverage under the policy of insurance naming Conagra and Norfolk Southern.

96.     ACE's and/or Chubbs' duty to defend Norfolk Southern is mature, has not been excused, and has not been discharged.

22

97.     ACE's and/or Chubb's duty to indemnify Norfolk Southern is active, has not been excused, and has not been discharged.

98.     ACE and/or Chubb has intentionally and maliciously failed to perform its/their contractual duty to defend and indemnify Norfolk Southern with respect to amounts Norfolk Southern paid to litigate the *Myers* Lawsuit.

99.     Norfolk Southern has discharged, or is excused from discharging, any obligation to perform conditions precedent to coverage and any covenants, the breach of which would form a partial or total defense to ACE's and/or Chubbs' performance, with respect to amounts paid to litigate and resolve the *Myers* Lawsuit.

100.     ACE and/or Chubb materially breached the insurance contract with Conagra and Norfolk Southern by: not promptly assuming Norfolk Southern's defense and paying Norfolk Southern all benefits owed as a result of Incident and *Myers* Lawsuit; and not putting Norfolk Southern in the position it would have been in had ACE and/or Chubb timely performed all of its/their contractual duties.

101.     As a direct and proximate result of ACE/Chubb's breach of the ACE Policy, Norfolk Southern has sustained substantial compensable losses for the amounts claimed under the ACE Policy, including but not limited to attorney fees and defense costs in defending the Incident and the *Myers* suit and attempting to obtain defense and indemnification of its losses arising from the Incident.  These expenses will continue with an amount to be determined at trial.

102.     ACE's and/or Chubb's failure to perform its/their contractual duty to defend and indemnify Norfolk Southern is an intentional, reckless, fraudulent, and malicious breach of the ACE Policy, justifying an award of punitive damages. *See, e.g*., *Reed v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct App. Oct 31, 2013). Specifically, ACE/Chubb intentionally,

23

fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Norfolk Southern's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Norfolk Southern's claim for insurance proceeds and suit defense; (3) unjustly refused and/or failed to pay Norfolk Southern's claim for its own financial preservation with no reasonable or justifiable basis; (4) denied by silence Norfolk Southern's defense and indemnity claim for no valid reason; (5) failed to treat its insured Norfolk Southern's interests with equal regard to its own; (6) represents to the public prompt action and claim-handling but then failed to provide any payment or even any prompt communication or coverage position; (7) has failed to reimburse or to agree to pay Norfolk Southern's currently incurred defense costs and expenses and to assume Norfolk Southern's defense; and (8) failed to timely investigate and provide benefits when ACE and/or Chubb knew, or reasonably should have known, that Norfolk Southern was justifiably relying on the money and benefits due it under the terms of the ACE Policy. Nevertheless, acting with conscious disregard for Norfolk Southern's rights and with the intention of causing or willfully disregarding the probability of causing unjust hardship to Norfolk Southern, ACE and/or Chubb consciously ignored Norfolk Southern's valid claim and withheld monies and benefits rightfully due Norfolk Southern.  As a result, Norfolk Southern is entitled to punitive damages in an amount to be determined at trial.

### COUNT III – Breach of Implied Covenant of Good Faith & Fair Dealing and Statutory Bad Faith Penalty

103.    All previous paragraphs are hereby incorporated by reference.

104.     Tenn. Code Ann. § 56-7-105 is a statutory directive requiring insurers to respond to requests for indemnification within sixty days of receiving a demand by either paying the claim or providing a coverage determination.

105.     Although Norfolk Southern provided written notice for itself on September 14, 2023, and although Conagra had been obliged to provide that notice since it first became aware of the Incident in 2021, ACE and/or Chubb have failed to respond to Norfolk Southern about the insurance coverage position, have failed to provide to Norfolk Southern a copy of the ACE Policy to which it is entitled, failed to initiate a claim process or identify a claim representative, failed to assume defense of Norfolk Southern in the *Myers* Lawsuit, failed to acknowledge indemnity of Norfolk Southern, failed to respond to Norfolk Southern about the scheduled mediation of which ACE/Chubb are aware, or should be aware, and have failed to reimburse Norfolk Southern its attorney fees and defense expenses related to the Incident and the *Myers* Lawsuit nor Norfolk Southern's attorney fees and expenses arising from its attempts to secure defense and indemnity from Conagra and/or ACE/Chubb through the ACE Policy.

106.     On December 20, 2023, although more than 60 days had passed since issuing its demand, Norfolk Southern continued to cooperate with and provide information to ACE and Chubb to assist in its assumption of its/their insurance obligations under the ACE Policy.

107.     To this day, there has been no substantive coverage determination.

108.     Tennessee recognizes that all contracts, including the ACE Policy, contain an implied covenant of good faith and fair dealing, which requires ACE and/or Chubb to deal with Norfolk Southern in a good-faith and fair manner and to take no actions to injure Norfolk Southern to receive, as an additional named insured, the benefit of the ACE Policy.

25

109. Additionally, pursuant to Tenn. Code Ann. § 56-7-105(a), ACE and/or Chubb has a statutory duty to act in good faith in determining whether to defend and pay a loss.

110. Pursuant to T.C.A. § 56-7-105(a), ACE and/or Chubb is/are liable for, in addition to the amount owed under the policy, a sum not to exceed 25% on the liability for the loss because it/they refused to pay the loss within sixty (60) days after the demand had been made and the refusal to pay the loss was not in good faith.

111. ACE and/or Chubb violated Tenn. Code Ann. § 56-7-105(a) in its/their relations with Norfolk Southern by engaging in bad faith claims handling practices and unreasonably and without proper cause withholding benefits due under the ACE Policy with respect to the *Myers* Lawsuit. Among other things:

    a. ACE and/or Chubb failed to promptly respond to Norfolk Southern's notice of the *Myers* Lawsuit;

    b. ACE and/or Chubb failed to promptly respond to Norfolk Southern's demand for defense and indemnity in the *Myers* Lawsuit;

    c. ACE and/or Chubb failed to investigate and promptly provide Norfolk Southern with a coverage determination on its submitted claims within the time limit set forth by Tenn. Code Ann. § 56-7-105(a) or even within a reasonable time;

    d. ACE and/or Chubb have engaged in a Byzantine and duplicitous claims reporting process and have otherwise deliberately ignored Norfolk Southern's notice of claim and demands in an effort to evade its/their ACE Policy coverage obligations;

26

e.  Alternatively, ACE and/or Chubb are believed to be relying on a deliberate misconstruction of the clear terms of the ACE Policy in an effort to evade its coverage obligations;

f.  Despite Norfolk Southern's request, ACE and/or Chubb have refused to represent Norfolk Southern's interests under the ACE Policy in the *Myers* Lawsuit, including the prospective mediation;

g.  ACE and/or Chubb have failed to effectuate prompt, fair, and equitable resolution of the defense and indemnity obligations of ACE and/or Chubb to Norfolk Southern;

h.  ACE and/or Chubb failed to tender payment of Norfolk Southern's claim for incurred defense costs or provide a good-faith basis for denial within 60 days as required by Tenn. Code Ann. § 56-7-l05(a); and

i.  Other similar actions that will be proven at trial.

112.  As a result of American Guarantee's violation of T.C.A. § 56-7-105(a), Norfolk Southern has suffered additional losses, including but not limited to attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Norfolk Southern prays that this Court enter judgment as follows:

A.  On its First Cause of Action, enter a declaratory judgment in favor of Norfolk Southern that, Norfolk Southern is an additional insured under the ACE Policy and is entitled to defense and indemnification for the Incident liabilities up to the applicable policy limit;

B.  On its Second Cause of Action, find a breach of the duty to defend and indemnify under the ACE Policy with respect to the *Myers* Lawsuit and award damages in an amount to be determined at trial, including punitive damages;

27

C.     On its Third Cause of Action, find a violation of Tenn. Code Ann. § 56-7-105(a) and order that ACE and/or Chubb pay additional damages to Norfolk Southern, not to exceed 25% of the total amount covered by the *Myers* Lawsuit under the ACE Policy;

D.     Order that the ACE and/or Chubb pay the costs Norfolk Southern has incurred as a result of this action, including attorney fees; and

E.     That the Court enter such other relief as is appropriate, including pre- and post-judgment interest.

Respectfully submitted,

*/s/ S. Camille Reifers*
S. Camille Reifers (#19856)
**Reifers Holmes & Peters, LLC**
80 Monroe Avenue, Suite 410
Memphis, TN 38103
(901) 521-2860
creifers@rhpfirm.com

28